UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LABNET INC., d/b/a Worklaw Network; SHAWE & ROSENTHAL LLP; ALLEN, NORTON & BLUE, P.A.; COLLAZO FLORENTINO & KEIL LLP; DENLINGER, ROSENTHAL & GREENBERG; KAMER ZUCKER ABBOTT; KEY HARRINGTON BARNES, P.C.; LEHR MIDDLEBROOKS VREELAND & THOMPSON, P.C.; NEEL HOOPER & BANES, P.C.; SEATON, PETERS & REVNEW, P.A.; SKOLER, ABBOTT & PRESSER, P.C.; and UFBERG & ASSOCIATES, LLP, | Case No. 16-CV-0844 (PJS/KMM) |
| Plaintiffs, | |
| v. | ORDER |
| UNITED STATES DEPARTMENT OF LABOR; THOMAS E. PEREZ, in his official capacity as Secretary of Labor; and MICHAEL J. HAYES, in his official capacity as Director, Office of Labor-Management Standards, | |
| Defendants. | |

Douglas P. Seaton, Thomas R. Revnew, and Tara Craft Adams, SEATON, PETERS & REVNEW, P.A.; Eric Hemmendinger, Mark J. Swerdlin, and Parker E. Thoeni, SHAW & ROSENTHAL LLP, for plaintiffs.

Elisabeth Layton, UNITED STATES DEPARTMENT OF JUSTICE; Ann M. Bildtsen, UNITED STATES ATTORNEY'S OFFICE, for defendants.

Plaintiff Labnet, Inc. ("Labnet") is an association of law firms that represent

management in labor and employment matters.  The remaining plaintiffs are members

of Labnet.  Plaintiffs bring this action to enjoin the implementation of a rule recently

promulgated by defendant United States Department of Labor ("DOL") under the

Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401

et seq.

This matter is before the Court on plaintiffs' motion for a temporary restraining

order or, in the alternative, a preliminary injunction or a stay.  The Court concludes that

plaintiffs are likely to succeed in their claim that portions of the new rule conflict with

the LMRDA.  But the Court nevertheless declines to enjoin or stay the new rule after

weighing the factors identified by the Eighth Circuit in *Dataphase Systems, Inc. v. C L

Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc).

## I.  BACKGROUND

Congress enacted the LMRDA "to protect employees' rights to organize, choose

their own representatives, bargain collectively, and otherwise engage in concerted

activities for their mutual aid or protection . . . ."  29 U.S.C. § 401(a).  To that end, the

LMRDA imposes certain disclosure and reporting obligations on unions and employers,

as well as on persons who are retained by employers to engage in "persuader activities"

concerning employees' collective-bargaining rights.  (Typically, such persons are

lawyers or labor-relations consultants.)  Specifically, § 203(b) of the LMRDA, 29 U.S.C.

§ 433(b), provides, in relevant part:

> Every person who pursuant to any agreement or
> arrangement with an employer undertakes activities where
> an object thereof is, directly or indirectly—
>
>> (1) to persuade employees to exercise or not to
>> exercise, or persuade employees as to the
>> manner of exercising, the right to organize and
>> bargain collectively through representatives of
>> their own choosing . . . .
>
> shall file within thirty days after entering into such
> agreement or arrangement a report with the Secretary . . .
> containing . . . a detailed statement of the terms and
> conditions of such agreement or arrangement. . . .

In addition to the report that must be filed within 30 days after entering into a

persuader agreement, consultants must also file an annual report for any year in which

they receive payments under such an agreement:

> Every such person shall file annually, with respect to each
> fiscal year during which payments were made as a result of
> such an agreement or arrangement, a report with the
> Secretary . . . containing a statement (A) of its receipts of any
> kind from employers on account of labor relations advice or
> services, designating the sources thereof, and (B) of its
> disbursements of any kind, in connection with such services
> and the purposes thereof. . . .

29 U.S.C. § 433(b)(2).  DOL interprets § 203(b) to require consultants to include in their

annual reports not only information about employers for whom they engaged in

persuader activity, but also information about all other employers for whom they

provided advice or services concerning labor relations, even if that advice and those services did not involve persuader activity.

The reporting obligation in § 203(b) is subject to a crucial qualification—a qualification that is the focus of DOL's new rule, and thus of this lawsuit. Under § 203(c) of the LMRDA, 29 U.S.C. § 433(c), the mere giving of "advice" does not trigger an obligation to report:

> Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer . . . .

There are two possible ways to understand § 203(c):

First, Congress could have viewed the persuader activity covered by § 203(b) and the advice covered by § 203(c) as mutually exclusive categories. Under this view, § 203(c) would not be *exempting* advice from the reporting requirements of § 203(b); instead, advice would not be covered by § 203(b) in the first place. This understanding of the statute deprives § 203(c) of any independent force, however. Section 203(c) would have no purpose, other than the belt-and-suspenders function of emphasizing or clarifying what is already provided in § 203(b). In other words, under this understanding, the elimination of § 203(c) from the LMRDA would have no substantive impact whatsoever.

Second, Congress could have viewed advice as a *type* of persuader activity. Under this view, § 203(c) provides an exemption—i.e., § 203(c) recognizes that advice can be persuader activity and exempts such advice from the reporting requirements that would otherwise apply under § 203(b). This understanding of the statute obviously gives § 203(c) an important function in limiting the scope of § 203(b). And deleting § 203(c) from the LMRDA would thus have a major substantive impact.

The Eighth Circuit long ago adopted this latter understanding of § 203(c)—that is, the understanding that § 203(c) exempts advice that is persuader activity from the reporting requirements that would otherwise apply to that advice under § 203(b). *See Donovan v. Rose Law Firm*, 768 F.2d 964, 973 (8th Cir. 1985) ("[W]e do not agree with the Fourth, Fifth, Sixth, and Seventh Circuits that the legislative history of the LMRDA supports the view that § 203(c) is merely a proviso to make explicit the implicit triggering requirement of § 203(b)."). And for over a half century, DOL's understanding of the statute has been the same. DOL has described "[t]he very purpose" of the advice exemption (§ 203(c)) as "remov[ing] from [§ 203(b)'s] coverage certain activity *that otherwise would have been reportable.*" *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Dole*, 869 F.2d 616, 618 (D.C. Cir. 1989) (emphasis added). Obviously, advice cannot "otherwise . . . [be] reportable" unless it is possible for advice to be persuader activity covered by § 203(b).

In determining what persuader activity constitutes "advice"—and thus falls within § 203(c)'s exemption—DOL has long applied a bright-line "accept or reject" test. 81 Fed. Reg. 15,935.  So, for example, a policy or speech that a consultant provides to an employer for use in persuading employees is deemed to be non-reportable advice so long as the employer is free to accept or reject the consultant's work.  81 Fed. Reg. 15,936.  And since 1989, DOL has taken the position that, as a practical matter, the accept-or-reject standard generally limits reportable activity to that which involves direct contact between the consultant and employees.  81 Fed. Reg. 15,926, 15,936.

With the exception of a brief period in 2001, DOL has followed the accept-or-reject standard since 1962.  81 Fed. Reg. 15,935-36.  During this time, the reporting of persuader activities has become uncommon, because persuaders only rarely have direct contact with employees.  81 Fed. Reg. 15,931.  At the same time, employers have increasingly come to rely on outside consultants and lawyers to help them conduct anti-unionization campaigns.  81 Fed. Reg. 15,931.  DOL estimates that employers use consultants to engage in such indirect persuasion in over 70 percent of union-organizing campaigns.  81 Fed. Reg. 15,926, 15,961.  As described by DOL:

> The consultant has no direct contact with employees, but it directs a campaign, often formulaic in its design and implementation, for the employer to persuade employees to vote against union representation.  Under this arrangement, the consultant often scripts the campaign, including drafting letters, flyers, leaflets, and emails that the employer

> distributes to its employees, writing speeches that
> management gives to employees in mandatory meetings,
> providing statements for supervisors to use in meetings they
> are required to hold with employees who report to them,
> often in one-on-one settings, and controlling the timing,
> sequence, and frequency of each of these events.

81 Fed. Reg. 15,926.

In an effort to require disclosure of more of this indirect persuader activity, DOL

promulgated a new rule entitled *Interpretation of the "Advice" Exemption in Section 203(c)*

*of the Labor-Management Reporting and Disclosure Act*, 81 Fed. Reg. 15,923 (Mar. 24, 2016).[1]

---

[1]The official citation for this rule is 81 Fed. Reg. 15,923.  *See Interpretation of the "Advice" Exemption in Section 203(c) of the Labor-Management Reporting and Disclosure Act*, https://federalregister.gov/a/2016-06296.  To retrieve the rule in Westlaw or Lexis, however, the citation is 81 Fed. Reg. 15,924.  (These databases apparently do not include the title page.)

The actual text of the new rule, as codified in the Code of Federal Regulations, does not set forth DOL's new interpretation of "advice."  Instead, the regulations direct the use of new reporting forms.  *See* 81 Fed. Reg. 16,020-21.  Essentially, then, the substance of the new rule is embodied in the forms and the directions that DOL provides about filling out the forms.  These forms include the LM-10 (for employers to report arrangements for persuader activities), the LM-20 (for consultants to report persuader activities), and the LM-21 (for consultants' annual reports).

DOL revised both the LM-10 and the LM-20 to reflect its new interpretation of the scope of the reporting obligation under § 203(b) and (c).  DOL has not yet revised the LM-21, however.  Instead, DOL intends to address the LM-21 in a separate rulemaking, 81 Fed. Reg. 16,000, and DOL has announced that, for the time being, it will not require compliance with those portions of the LM-21 that require reporting of information relating to employers for whom the consultant did not engage in any persuader activity, *see* U.S. Dep't of Labor, *Form LM-21 Special Enforcement Policy* (Apr. 13, 2016),

(continued...)

The new rule dispenses with the longstanding "accept or reject" test.  81 Fed. Reg. 15,937.  Instead, DOL now defines "advice" as "an oral or written recommendation regarding a decision or a course of conduct."  81 Fed. Reg. 15,939.

Moreover, DOL has abandoned its longstanding interpretation of the LMRDA and now insists that something done by a consultant cannot be *both* persuader activity *and* advice.  As noted, this conflicts with the Eighth Circuit's understanding of the statute, and DOL's position is difficult to understand:  If, for example, a consultant gives advice to an employer about how to persuade its employees to vote against union representation, the consultant is obviously engaging in persuader activity, and the consultant is just as obviously giving advice.  Yet DOL now insists that persuader activity and advice are distinct categories with no overlap:

> "Advice" does not include persuader activities, *i.e.*, actions, conduct, or communications by a consultant on behalf of an employer that are undertaken with an object, directly or indirectly, to persuade employees concerning their rights to organize or bargain collectively.

81 Fed. Reg. 15,937.

---

[1](...continued)
https://www.dol.gov/olms/regs/compliance/ecr/lm21_specialenforce.htm.

DOL then proceeds from this premise to identify five general categories of reportable activity—i.e., activities that, in DOL's view, are persuader activity and therefore cannot possibly be advice:[2]

(1)     A consultant engages in *direct* contact or communication with any employee, with an object to persuade such employee; or

(2)     A consultant who has no direct contact with employees undertakes the following activities with an object to persuade employees:

     (a)     [p]lans, directs, or coordinates activities undertaken by supervisors or other employer representatives, including meetings and interactions with employees;

     (b)     provides material or communications to the employer, in oral, written, or electronic form, for dissemination or distribution to employees;

---

[2]The revised LM-20 form for reporting persuader activities (which is attached in an appendix to the new rule) further breaks these categories down into 13 separate activities. 81 Fed. Reg. 16,051. The activities are (1) drafting, revising, or providing written materials for presentation, dissemination, or distribution to employees; (2) drafting, revising, or providing a speech for presentation to employees; (3) drafting, revising, or providing audiovisual or multi-media presentations for presentation, dissemination, or distribution to employees; (4) drafting, revising, or providing website content for employees; (5) planning or conducting individual employee meetings; (6) planning or conducting group employee meetings; (7) training supervisors or employer representatives to conduct individual or group employee meetings; (8) coordinating or directing the activities of supervisors or employer representatives; (9) establishing or facilitating employee committees; (10) developing employer personnel policies or practices; (11) identifying employees for disciplinary action, reward, or other targeting; (12) conducting a seminar for supervisors or employer representatives; and (13) speaking with or otherwise communicating directly with employees. The LM-10 form for employers contains an identical list, except that it omits (12) (the seminar activity). 81 Fed. Reg. 16,038.

     (c)      conducts a seminar for supervisors or other employer representatives; or

     (d)      develops or implements personnel policies, practices, or actions for the employer.

81 Fed. Reg. 15,938.  The first category simply restates DOL's longstanding interpretation that direct contact with employees is reportable activity; the remaining four categories represent DOL's attempt to narrow the advice exemption in order to capture more indirect persuader activity.

If a consultant engages in any of these activities with the requisite intent, then DOL considers the activity reportable, without any need even to *ask* whether the activity would also constitute advice.  *See* 81 Fed. Reg. 15,969 ("The analysis has two parts:  (a) Did the consultant engage in the direct and indirect contact activities identified in the instructions; and (b) did the consultant do so with an object to persuade employees?"); *see also* 81 Fed. Reg. 15,937 ("This rule restores the focus of section 203 persuader reporting to whether a consultant's activities . . . have an object to persuade employees about their union representation and collective bargaining rights.").

## II.  ANALYSIS

### A.  Standard of Review

A court must consider four factors in deciding whether to grant a preliminary injunction or stay the enforcement of a regulation:[3]  (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between that harm and the injury that granting the injunction will inflict on the other parties; and (4) the public interest.  *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  Preliminary injunctions are extraordinary remedies, and the party seeking such relief bears the burden of establishing its entitlement to the relief under the *Dataphase* factors.  *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

In ordinary cases, a party seeking a preliminary injunction need not show that it is more likely than not to succeed; instead, a party need show only a fair chance of prevailing on the merits.  *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 733 (8th Cir. 2008) (en banc); *Dataphase Sys. Inc.*, 640 F.2d at 113-14.  When a party seeks to enjoin a statute or regulation, however, the party must establish a likelihood of success on the merits—that is, a greater than fifty percent chance of prevailing.  *See*

---

[3]As plaintiffs note, when a party challenges a regulation under the Administrative Procedure Act, the appropriate relief is not a preliminary injunction but rather a stay.  *See* 5 U.S.C. § 705.  The parties agree that the relevant factors and analysis are the same in either case.

*Rounds*, 530 F.3d at 732-33 & n.6.  This stricter standard "'reflects the idea that

governmental policies implemented through legislation or regulations developed

through presumptively reasoned democratic processes are entitled to a higher degree of

deference and should not be enjoined lightly.'"  *Id.* at 732 (quoting *Able v. United States*,

44 F.3d 128, 131 (2d Cir. 1995)).

## B.  Likelihood of Success

### 1.  Count I: Contrary to Statute

Plaintiffs challenge the new rule under the Administrative Procedure Act

("APA"), 5 U.S.C. § 706, alleging that the new rule is contrary to the plain meaning of

§ 203(c) of the LMRDA.  DOL has the authority to issue, amend, and rescind rules and

regulations that prescribe the form and publication of reports required by the LMRDA

and that are necessary to prevent the evasion of the reporting requirements.  29 U.S.C.

§ 438.  The parties agree that, because DOL promulgated the new rule under this

rulemaking authority, its interpretation of the statute must be examined under *Chevron,*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The first step under *Chevron* is to determine whether the statutory language

clearly resolves the issue.  *Id.* at 842.  If Congress's intent is clear, then the inquiry ends.

*Id.* at 842-43.  If the statute is silent or ambiguous, however, then the court must

determine whether the agency's answer is based on a permissible construction of the statute.  *Id.* at 843.

As a general matter, the Court agrees with DOL that its previous interpretation of § 203(b) and § 203(c) was underinclusive.  In other words, the Court agrees that an act can constitute persuader activity—and not constitute advice—even though the act does not involve direct contact with employees.  Under DOL's longstanding interpretation of the LMRDA, some persuader activity that was reportable under § 203(b), and not exempt under § 203(c), nevertheless went unreported.  Thus, the Court rejects any suggestion that DOL cannot change its interpretation of the LMRDA to require reporting of persuader activity that does not involve direct contact with employees.

The Court agrees with plaintiffs, however, that DOL's new rule conflicts with § 203(c)—at least in some of its applications—because it requires a consultant "to file a report covering the services of such person by reason of his giving or agreeing to give advice to [an] employer . . . ."  The problem is not with the manner in which DOL formally defines "advice."  Again, DOL now defines "advice" to mean "an oral or written recommendation regarding a decision or a course of conduct," which is a perfectly reasonable way to define the term.  81 Fed. Reg. 15,939.  The problem is that DOL does not apply its own definition of "advice."  Instead, DOL requires reporting of

activity that is "advice" under any reasonable interpretation of that word— *including DOL's.*

At the root of DOL's problem is its insistence that persuader activity and advice are mutually exclusive categories.  As already noted, this is not what the Eighth Circuit believes, and this Court has difficulty understanding how this could be true.  Giving advice is unquestionably an "activity," and that "activity" can unquestionably be performed with the intent to indirectly "persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing . . . ."  29 U.S.C. § 433(b)(1).

In reversing a position that it has maintained for over a half century—and in denying the very existence of what the D.C. Circuit described as the "overlap area," *International Union*, 869 F.2d at 618—DOL has painted itself into a corner.  By starting with the premise that, if something is persuader activity, it cannot possibly be advice, DOL ends up struggling mightily to define as non-advice activity that any reasonable person would define as advice.  And in the course of that struggle, DOL ends up drawing lines that are simply incoherent.

Take, for example, a hypothetical that the Court posed to DOL at the hearing on plaintiffs' motion:  A lawyer writes the following letter to a client: "I advise you to

adopt a more generous policy regarding lunch breaks in order to persuade your employees not to unionize." *See* Hr'g Tr. 54-55, May 26, 2016 [ECF No. 59].  Writing and sending this letter is clearly persuader activity:  The lawyer has engaged in an "activity," and the lawyer's object is to indirectly "persuade employees. . . not to exercise . . . the right to organize and bargain collectively through representatives of their own choosing . . . ."  Nevertheless, DOL says that this is non-reportable advice. Hr'g Tr. 54-55.  In other words, DOL agrees that this persuader activity *is* advice, even though DOL also insists that persuader activity cannot *be* advice.

Alter the hypothetical just a bit:  A lawyer writes the following letter to a client: "I advise you to adopt the attached policy regarding lunch breaks in order to persuade your employees not to unionize."  Attached to the letter is a draft of a more generous policy regarding lunch breaks.  Writing and sending this letter clearly involves the giving of advice:  The lawyer has advised the client to adopt a particular policy.  Yet this, says DOL, is *not* advice, but instead persuader activity.  Hr'g Tr. 55.

There is no meaningful distinction between these two scenarios.  Indeed, when DOL's attorney was pressed at oral argument to identify a meaningful distinction, she could not do so, even after silently contemplating the question for a lengthy period of time.  This failure did not represent any shortcoming on the part of counsel, but the

incoherence of the position that she was sent to defend.  It is difficult to understand

why it would matter whether, in a letter to an employer, a consultant says:

- "I advise you to give your employees a one-hour paid lunch break in order to persuade them not to unionize."

- "I advise you to adopt the following policy in order to persuade your employees not to unionize:  'Effective immediately, employees will be given a one-hour paid lunch break.'"

- "I advise you to adopt the attached policy in order to persuade your employees not to unionize."  (The attachment is a sheet of paper that reads:  "Effective immediately, employees will be given a one-hour paid lunch break.")

In all three cases, the lawyer is both giving advice (as any reasonable person

would define that term) and engaging in persuader activity.  Yet DOL would deem the

first letter to constitute (only) non-reportable advice and the third letter to constitute

(only) reportable persuader activity—and the Court does not know what DOL would

think of the second letter.

The Court and DOL's attorney had similar difficulty figuring out how DOL's

new interpretation of § 203(c) would apply in other contexts.  For example, DOL's

attorney suggested (without being quite sure) that it would be reportable persuader

activity—and therefore not advice—to advise a client to distribute a flyer to employees

stating that the client's industry is currently in a recession and that unionized firms tend

to fail at a faster rate than non-unionized firms.  Hr'g Tr. 52.  The Court cannot

understand how this scenario is distinguishable in any material way from advising a

client to adopt a more generous lunch policy, which DOL admits is non-reportable

advice.

Likewise, DOL had trouble explaining when and why revising an employer-

drafted document is reportable under its interpretation of § 203(c).  Hr'g Tr. 57-59.

Suppose that an employer asks its attorney to edit a draft of a memorandum that the

employer intends to send to its employees to persuade them not unionize.  If the

attorney corrects spelling errors, has the attorney engaged in reportable persuader

activity?  What if the attorney corrects grammatical mistakes?  Suggests replacing

passive verbs with active verbs, so that the document will be more persuasive?

Suggests a font that is easier on the eyes, so that employees will be more likely to read

the document?  Suggests inserting one word in one sentence?  Suggests inserting a few

words in a few sentences?  Suggests inserting a few sentences?  It seems pretty clear that

DOL considers correcting spelling errors to be non-reportable advice, and adding

words or sentences to be reportable persuader activity, but it is not at all clear how DOL

comes to this conclusion.

DOL contends that its interpretation of § 203(c) is sound notwithstanding the fact

that it has difficulty applying that interpretation to certain hypothetical scenarios.  But

the Court's questions did not involve exotic scenarios or outlier cases; the Court asked

DOL about the sort of bread-and-butter work that lawyers perform for clients every single day.  DOL's difficulty answering the Court's questions reflects not the inevitable ambiguities that arise when applying a reasonably clear principle to marginal cases, but rather the untenability of DOL's central position that persuader activity can never be advice, and advice can never be persuader activity.

Proceeding from that flawed premise, DOL categorizes conduct that clearly constitutes advice as reportable persuader activity.  For example, a lawyer who merely advises a client to adopt a new policy—or merely advises a client to add a sentence to a memorandum to its employees—has done one thing and one thing only:  given the client *advice*.  Under § 203(c), the giving of advice to an employer cannot, by itself, trigger the reporting requirement.  But under DOL's new interpretation, the giving of what any reasonable person would define as "advice" does, by itself, trigger the reporting requirement.  The Court therefore concludes that plaintiffs have a strong likelihood of success on their claim that the new rule conflicts with the plain language of the statute.[4]

---

[4]Plaintiffs also contend that the new rule requires attorneys to disclose confidential information and therefore conflicts with 29 U.S.C. § 434.  For the reasons explained at the hearing, however, the Court interprets § 434 to apply only to information protected by the attorney-client privilege (rather than to all information that could be considered confidential), and the Court does not agree that the new rule requires the disclosure of privileged information.  Hr'g Tr. 14-24.

The Court emphasizes that it does not hold that the word "advice" in § 203(c) is clear in all of its applications and thus that there is no room for DOL to engage in interpretation.  Rather, the Court holds that the word "advice" is clear in *some* of its applications—i.e., that there are certain activities (such as advising a client to add a sentence to a memorandum) that involve the giving of "advice" under *any* reasonable interpretation of the word—and that DOL's new regulation conflicts with § 203(c) because it requires some of those activities to be reported.

### 2.   Count II: First Amendment

Plaintiffs next contend that the new rule targets anti-union speech and therefore unconstitutionally discriminates on the basis of viewpoint and content.  *See Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2229-30 (2015) (describing the distinction between content and viewpoint discrimination).  The Court disagrees.

The rule does not discriminate based on viewpoint; instead, the rule applies to both pro- and anti-union speech, as does the LMRDA itself.  Like the LMRDA, the rule requires reporting of activities that have as an object "to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing . . . ." 29 U.S.C. § 433(b)(1); 81 Fed. Reg. 16,038 (LM-10 tracking statutory language); 81 Fed. Reg. 16,051 (LM-20 tracking statutory language).  If the LMRDA itself does not

unconstitutionally discriminate on the basis of viewpoint—and plaintiffs' complaint

does not allege that it does—then plaintiffs are unlikely to be able to establish that the

new rule unconstitutionally discriminates on the basis of viewpoint.

Plaintiffs point to the discussion of anti-union activities in the preamble to the

rule as proof that the rule discriminates on the basis of viewpoint. But "the contention

that a statute is 'viewpoint based' simply because its enactment was motivated by the

conduct of the partisans on one side of a debate is without support." *Hill v. Colorado*,

530 U.S. 703, 724 (2000); *see also Phelps-Roper v. Nixon*, 545 F.3d 685, 691 (8th Cir. 2008)

("The plain meaning of the text controls, and the legislature's specific motivation for

passing a law is not relevant, so long as the provision is neutral on its face."), *overruled*

*on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012) (en

banc). The new rule does not, therefore, regulate on the basis of viewpoint.

Plaintiffs are correct, however, that the new rule—like the LMRDA

itself—regulates on the basis of content. *See Reed*, 135 S. Ct. at 2230 ("a speech

regulation targeted at specific subject matter is content based even if it does not

discriminate among viewpoints within that subject matter"). But it does not follow that

the new rule (or the LMRDA[5]) must withstand strict scrutiny. Instead, because the new

---

[5]Plaintiffs have not alleged that the LMRDA is unconstitutional. If the LMRDA is a constitutional content-based statute, then the new rule is likely a constitutional content-based regulation.

rule imposes disclosure obligations, it is subject to the "exacting scrutiny" standard. *See*

*Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 366-67 (2010) (applying exacting

scrutiny to disclosure rules); *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d

864, 874-75 (8th Cir. 2012) (en banc) (although laws that burden political speech are

ordinarily subject to strict scrutiny, disclosure laws are instead subject to exacting

scrutiny).[6]   Under this standard, there must be a substantial relation between the

disclosure requirement and a sufficiently important governmental interest. *Citizens*

*United*, 558 U.S. at 366-67.

Applying exacting scrutiny, courts have upheld disclosure requirements

imposed on election-related contributions and expenditures. *Id.*; *Buckley v. Valeo*, 424

U.S. 1, 60-61 (1976).   Plaintiffs contend that this case is distinguishable from election

cases because the governmental interest here is weaker.   In election cases, there is a

strong interest in knowing who has contributed to a candidate, because the candidate

may be beholden to those contributors.   And there is a strong interest in knowing who

is behind an advertisement or other direct contact with voters.   In this case, plaintiffs

say, there is no similar interest in disclosing the identity of consultants.   Employers pay

consultants for their services, and thus are not beholden to them in the way that elected

---

[6]Plaintiffs' argument that strict scrutiny applies to disclosure requirements that
are content-based is plainly incorrect; the Supreme Court has applied exacting scrutiny
to disclosure laws that are explicitly content-based. *See Citizens United*, 558 U.S. at 366-
67 (upholding disclosure law aimed at "electioneering communications").

officials are beholden to contributors.  And consultants have no direct contact with

employees; an employer who speaks to its employees is speaking on its own behalf

(even if a consultant drafted the speech), just as a candidate for office is speaking on his

or her own behalf (even if a campaign aide drafted the speech).

In upholding disclosure requirements regarding elections, however, the Supreme

Court has not taken such a limited view of the government interests at stake.  In

addition to recognizing the value of deterring corruption and providing voters with

information about third parties to whom a candidate might be beholden, the Supreme

Court has also recognized that identifying the source of funds "allows voters to place

each candidate in the political spectrum more precisely than is often possible solely on

the basis of party labels and campaign speeches."  *Buckley*, 424 U.S. at 67; *see also id.* at 81

("The corruption potential of these [independent] expenditures may be significantly

different, but the informational interest can be as strong as it is in coordinated spending,

for disclosure helps voters to define more of the candidates' constituencies.").  Beyond

that, the Supreme Court has recognized the interest of shareholders in evaluating

"whether their corporation's political speech advances the corporation's interest in

making profits . . . ."  *Citizens United*, 558 U.S. at 370.

In other words, disclosure is valuable not simply because it deters corruption,

but also because it provides information about the views of candidates' supporters,

which in turn provides a fuller context for understanding the views of the candidates themselves.  Further, the governmental interest in disclosure extends beyond the political arena; disclosure is also valuable in enabling shareholders to exercise their rights as stakeholders in a business that makes political contributions.

The interests here are analogous.  As the government argues, employees are better equipped to assess an employer's union-related message if they know that the message has been scripted by a third party.  For example, employers commonly argue that "a union is a 'third party' that employees do not need to further their interests," 81 Fed. Reg. 15,932, and that the employer lacks the financial resources to deal with a union, 81 Fed. Reg. 15,926-27.  Knowing that messages from an employer originated with a third party who was paid by the employer to help influence the employees gives those employees a fuller context in which to evaluate the employer's arguments.  Such "transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages."  *Citizens United*, 558 U.S. at 371; *cf. Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1215 (6th Cir. 1985) (rejecting argument that disclosure of direct-contact persuader activity was not required where identity of persuader was already made known to employees).

For these reasons, plaintiffs have failed to establish that they are likely to succeed on their First Amendment claims.

3.  Count III: Void for Vagueness

Plaintiffs next contend that the new rule is void for vagueness.  *See FCC v. Fox Television Stations*, 132 S. Ct. 2307, 2317 (2012) (laws must be sufficiently clear so as to provide regulated parties notice of their obligations and prevent arbitrary and discriminatory enforcement).  Again, the Court disagrees.

The Court has found that aspects of the new rule are likely invalid because they require the reporting of advice that is exempt from disclosure under § 203(c).  The Court has also questioned the manner in which DOL has construed the term "advice," pointing out that DOL makes distinctions between activities that are materially indistinguishable and struggles to place certain common activities on one side or the other of the untenable divide that it has created between persuader activities and advice.  But the Court's criticism should not be confused with a finding that the rule itself is impermissibly vague.

To the contrary, the application of the new rule appears rather straightforward.  As explained above, the rule is essentially embodied in the revised LM-10 and LM-20 forms and their corresponding instructions.  The forms ask filers to indicate whether any activities were undertaken with the requisite intent, and then provide a detailed list of thirteen different activities from which to choose.  The descriptions of the activities are fairly concrete and easy to understand.  Filling out the form is simply a matter of

checking the box next to the activity or activities that the filer performed (or, if the filer

is an employer, contracted for) with the requisite intent.

Plaintiffs contend that the rule is nevertheless vague because DOL provides little

guidance in determining when an activity is performed with the requisite intent to

persuade.  But "a regulation is not vague because it may at times be difficult to prove an

incriminating fact"; rather, a regulation is vague when "it is unclear as to what fact must

be proved."  *Id.*  Here, it is clear what fact must be proved:  the filer's mental state.  *Cf.*

*Master Printers of Am. v. Donovan*, 751 F.2d 700, 711 (4th Cir. 1984) (rejecting vagueness

challenge to LMRDA because the word "persuade" is sufficiently clear).

Plaintiffs fault DOL for saying that whether such an intention will be found

depends on all of the surrounding facts and circumstances.  That is, however, simply

another way of saying that "it may at times be difficult to prove an incriminating

fact . . . ."  Legal consequences often turn on subjective intent, and deciding whether the

requisite intent was present almost always turns on an analysis of the surrounding facts

and circumstances.  For example, many criminal laws require proof of a mental state

that, in the abstract, sounds quite vague.  *See, e.g.*, 21 U.S.C. § 841(a)(1) (proscribing

possession of controlled substances with intent to distribute); *see also United States v.*

*Williams*, 553 U.S. 285, 304-306 (2008) (rejecting vagueness challenge to law proscribing

the pandering of material "in a manner that reflects the belief, or that is intended to

cause another to believe" that it is child pornography). This does not mean that those laws are void for vagueness. *See Williams*, 553 U.S. at 304 ("perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity" (citation and quotations omitted)).

In sum, the Court finds that plaintiffs are unlikely to succeed in invalidating the new rule on vagueness grounds.

### 4. Count IV: Arbitrary and Capricious

Plaintiffs next challenge the new rule as arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). In particular, plaintiffs contend that DOL did not consider all relevant data because the agency did not conduct any of its own research before adopting the new rule. Instead, DOL relied on the research of third parties, and DOL considered approximately 9,000 comments on the proposed rule. 81 Fed. Reg. 15,931, 15,945, 15,962.

Plaintiffs do not cite any authority for the proposition that agencies are required to conduct their own research rather than rely on third-party research. Instead, plaintiffs merely disagree with the weight that DOL chose to give to third-party research. The APA does not authorize a Court to substitute its judgment for that of the agency, however. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009).

Plaintiffs are not likely to succeed in establishing that the new rule is arbitrary or capricious.

### 5.   Count V: Overbroad

Plaintiffs next challenge as overbroad the annual reporting obligation established by the LM-21.  Unlike the LM-20, the LM-21 goes beyond requiring disclosures concerning persuader activities; it requires consultants to report all receipts from all clients in connection with all labor-relations advice and services, regardless of whether the advice or services were for the purpose of persuading employees.  In other words, if a consultant engages in persuader activities for one client, the LM-21 requires the consultant to report on *all* clients for whom it provided *any* type of labor-relations advice or services—even clients for whom it did not perform any persuader activities.

In *Donovan v. Rose Law Firm*, 768 F.2d 964 (8th Cir. 1985), the Eighth Circuit rejected DOL's attempt to enforce compliance with these broad reporting requirements, finding it "extraordinarily unlikely" that Congress intended consultants to have to report activities on behalf of employers who were not themselves required to make any report under the LMRDA.  *Id.* at 975.  As the Eighth Circuit noted, however, four other circuits had previously upheld DOL's broad view of the LM-21 reporting requirements. *Id.* at 967.  So far as the Court is aware, this circuit split persists to this day.

Relying on *Rose Law Firm*, plaintiffs argue that, even if they are required to comply with the rest of the new rule, they should not be required to comply with the expansive LM-21 reporting requirements.  The Court need not address plaintiffs' claim at this time, however.  As noted above, DOL has issued a Special Enforcement Policy under which it will not require compliance with those portions of the LM-21 that require reporting of information regarding employers for whom the consultant did not engage in any persuader activity.  As a result, even if plaintiffs eventually succeed on their claim (which seems likely in light of *Rose Law Firm*), plaintiffs are not currently facing any threat of irreparable harm.

6.  Count VI: Regulatory Flexibility Act

Finally, plaintiffs allege that DOL violated the Regulatory Flexibility Act ("RFA"), 5 U.S.C. § 601 et seq.  The RFA requires agencies to prepare an initial and then a final regulatory flexibility analysis describing the impact of a proposed rule on small entities.  5 U.S.C. §§ 603, 604.  If the agency certifies that the rule will not have a significant impact on a substantial number of small entities, the agency need not perform this analysis.  5 U.S.C. § 605(b).  A small entity that is adversely affected by a rule may bring an action under the APA for judicial review of the agency's compliance with the RFA.  5 U.S.C. § 611(a)(1).

DOL certified that the new rule will not have a significant economic impact on a substantial number of small entities.  81 Fed. Reg. 16,015.  Plaintiffs (who allege that they are small entities within the meaning of the RFA) contend that DOL's certification is arbitrary and capricious because DOL's finding conflicts with the published analysis of a third party and because DOL failed to account for the cost of filing the LM-21.

The D.C. Circuit recently explained the interaction between the APA's arbitrary-and-capricious standard and the RFA:

> The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained. Under *State Farm*, we must assess, among other things, whether the agency decision was based on "consideration of the relevant factors."  *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (internal quotation marks omitted).  The Regulatory Flexibility Act makes the interests of small businesses a "relevant factor" for certain rules.  Therefore, the APA together with the Regulatory Flexibility Act require that a rule's impact on small businesses be reasonable and reasonably explained.  A regulatory flexibility analysis is, for APA purposes, part of an agency's explanation for its rule. *See Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 539 (D.C. Cir.1983) ("a reviewing court should consider the regulatory flexibility analysis as part of its overall judgment whether a rule is reasonable"); *see also Thompson v. Clark*, 741 F.2d 401, 405 (D.C. Cir. 1984) ("Thus, if data in the regulatory flexibility analysis—or data anywhere else in the rulemaking record—demonstrates that the rule constitutes such an unreasonable assessment of social costs and benefits as to be arbitrary and capricious, the rule cannot stand.") (citation omitted).

*Nat'l Tel. Co-op Ass'n v. FCC*, 563 F.3d 536, 540-41 (D.C. Cir. 2009).  Judicial review under this standard is narrow and highly deferential.  *Id.* at 541.

Under this deferential standard, the Court cannot find that plaintiffs are likely to succeed in demonstrating that the rule is "such an unreasonable assessment of social costs and benefits as to be arbitrary and capricious . . . ."  Plaintiffs rely almost entirely on an article in which the author—Diana Furchtgott-Roth, the former chief economist of DOL—contends that the cost of complying with the new rule could reach $7.5 to $10.6 billion in the first year and $4.3 to $6.5 billion per year thereafter.

The Court is not in a position to engage in a detailed analysis of the assumptions behind these conclusions, but suffice it to say that many of those assumptions seem problematic.  For example, Furchtgott-Roth makes assumptions about the number of employers who receive at least $2,500 worth of legal advice (apparently of any kind) and then assumes that every one of those employers will incur compliance costs at an hourly rate of $104.33 every year whether or not they face a unionization drive.  Assuming that every employer who receives any kind of legal advice will incur LMRDA compliance costs appears at odds with the limited scope of the LMRDA, which applies only to employers who engage consultants to help persuade employees regarding their unionization rights.  Furchtgott-Roth also assumes that law firms and consulting firms will each spend a total of 200 hours familiarizing themselves with

LM-20 and LM-21 in the first year and 50 hours per year thereafter.  These estimates strike the Court as highly inflated.  In short, the analysis in the article does not convince the Court that plaintiffs are likely to succeed in showing that DOL's RFA analysis was arbitrary and capricious.

Finally, to the extent that plaintiffs are faulting DOL for failing to account for the cost of filing the LM-21, their challenge is premature because the LM-21 will be the subject of a separate rulemaking.  81 Fed. Reg. 16,000; *see Nat'l Tel. Co-op Ass'n*, 563 F.3d at 541-42 (agency could permissibly postpone consideration of certain costs that would be associated with a separate rulemaking).

## C.  Irreparable Harm

Plaintiffs have shown a likelihood of success on one of their claims—specifically, their claim that the new rule requires the reporting of some activities that are exempt from disclosure under § 203(c).  Plaintiffs' only claim of irreparable harm, however, is that they will be forced to guess about what activity is required to be reported, with an incorrect guess carrying criminal penalties.  *See* 29 U.S.C. § 439.  But the Court has found that plaintiffs are unlikely to succeed in establishing that the rule is void for vagueness.  Moreover, criminal penalties do not attach unless the violation is willful, meaning that it was committed in knowing or reckless disregard of the law.  29 U.S.C. § 439(a); *United States v. Briscoe*, 65 F.3d 576, 587 (7th Cir. 1995).  The existence of a

scienter requirement helps to mitigate any problems with vagueness.  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Even if plaintiffs had made a stronger showing of vagueness, they have offered little in the way of evidence that they are likely to suffer irreparable harm.  Essentially, their evidence is limited to a statement in their complaint—supported by an affidavit attesting that the statement is true—that they intend to continue advising their clients in ways that are likely to trigger the reporting requirement.  Compl. ¶ 36.  The Court assumes, for the sake of argument, that this is an assertion that plaintiffs plan to engage in activities that will have to be reported under the new rule even though those activities constitute "advice" that is exempted from disclosure under § 203(c). Nevertheless, plaintiffs have not made a particularly compelling showing of irreparable harm.  They have not shown that their First Amendment rights will be violated, nor that they will be forced to violate the attorney-client privilege, nor that they will be forced to violate the rules of professional conduct.  They also have not shown that they will have to identify clients for whom they have not engaged in any persuader activities; DOL has suspended the enforcement of that portion of the LM-21.

At worst, plaintiffs are faced with the prospect of filling out some forms that they should be exempt from having to fill out under § 203(c).  Even that harm is uncertain, however, given that plaintiffs have not described with any specificity the activities in

which they intend to engage.  In short, plaintiffs' showing of irreparable harm is both

minimal and speculative.

*D.  Balance of Harms and the Public Interest*

There is inherent harm in enjoining an agency from enforcing a regulation that

has been promulgated pursuant to authority delegated from Congress.  Although the

Court has found that the new rule is likely invalid in some respects, plaintiffs' minimal

showing of a threat of irreparable harm is not sufficient to warrant the extraordinary

relief of a preliminary injunction.  This is especially true because the rule plainly has

multiple valid applications; as noted, DOL has identified thirteen types of conduct to

which the rule applies, only some of which seem to require the reporting of advice that

is exempt under § 203(c).  An order staying enforcement of the entire rule would

therefore prevent DOL from requiring disclosure of information that it has the right

(indeed, a statutory mandate) to obtain.

Under the circumstances—when plaintiffs have launched a facial challenge to a

new regulation, when it appears that the regulation's potentially valid applications may

outnumber its potentially invalid ones, and when there is only a minimal threat of

irreparable harm—the Court concludes that it is preferable to let the regulation take

effect and leave plaintiffs to raise their arguments in the context of actual enforcement

actions.  The Court therefore denies plaintiffs' motion for a preliminary injunction or stay.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT plaintiffs' motion for a temporary restraining order, or, in the alternative, for a preliminary injunction or stay [ECF No. 13] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 22, 2016

s/Patrick J. Schiltz\
Patrick J. Schiltz\
United States District Judge